Filed 11/30/16 Certified for Publication (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NEWPORT HARBOR VENTURES, LLC, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> MORRIS CERULLO WORLD EVANGELISM et al., <br><br> Defendants and Appellants. | G052660 <br><br> (Super. Ct. No. 30-2013-00665314) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.  Appellants' request for judicial notice.  Granted. Respondents' request for judicial notice.  Granted.

Galuppo & Blake, Louis A. Galuppo, Steven W. Blake, Andrew E. Hall and Daniel T. Watts for Defendants and Appellants.

Knypstra Law, Bradley P. Knypstra and Grant Hermes for Plaintiffs and Respondents.

\*        \*        \*

## INTRODUCTION

A special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure section 425.16,[1] is to be filed "within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (§ 425.16, subd. (f).)[2] In this case, we address whether an anti-SLAPP motion was timely when it was filed within 60 days of service of a third amended complaint and no previous anti-SLAPP motion had been filed. We conclude the filing of an amended complaint does not automatically reopen the period for bringing an anti-SLAPP motion. Whether the filing of an amended complaint reopens the period for bringing an anti-SLAPP motion depends on the basis and nature of the claims in the amended complaint.

Defendants and appellants Morris Cerullo World Evangelism (Cerullo) and Roger Artz filed a special motion under the anti-SLAPP statute to strike the third amended complaint brought by plaintiffs and respondents Newport Harbor Ventures, LLC (NHV), and Vertical Media Group, Inc. (VMG).[3] The third amended complaint alleged four causes of action: (1) breach of written contract, (2) breach of the implied covenant of good faith, (3) quantum meruit, and (4) promissory estoppel. The first two causes of action had been pleaded in earlier complaints while the latter two causes of action were new to the third amended complaint.

The act asserted by Cerullo and Artz to have been "in furtherance of [their] right of petition or free speech" (§ 425.16(b)(1)) was the settlement of an unlawful detainer action. That settlement had been alleged in the initial complaint and each

---

[1] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Further code references are to the Code of Civil Procedure.

[2] We refer to section 425.16, subdivision (f) as section 425.16(f). In like fashion, we refer to section 425.16, subdivision (b)(1) as section 425.16(b)(1), and section 425.16, subdivision (e) as section 425.16(e).

[3] We refer to Cerullo and Artz's special motion to strike as the anti-SLAPP motion.

succeeding complaint.  The trial court denied the anti-SLAPP motion on the ground it was untimely filed because it should have been filed in response to the earlier complaints.

We hold that, under section 425.16(f), an anti-SLAPP motion is untimely if not filed within 60 days of service of the first complaint that pleads a cause of action coming within anti-SLAPP protection unless the trial court, in its discretion and upon terms it deems proper, permits the motion to be filed at a later time.  Thus, we conclude the anti-SLAPP motion was untimely as to the breach of contract and breach of implied covenant causes of action because Cerullo and Artz could have challenged those causes of action by filing an anti-SLAPP motion to prior complaints.  The anti-SLAPP motion was timely as to the quantum meruit and promissory estoppel causes of action because they were new causes of action that could not have been challenged by an anti-SLAPP motion to a prior complaint.

Because we exercise de novo review, we address the merit of the anti-SLAPP motion as to the quantum meruit and promissory estoppel causes of action.  Those causes of action arose out of protected activity as defined in section 425.16(e); that issue is not in dispute.  We conclude that NHV and VMG met their burden of establishing a probability of prevailing on both the quantum meruit cause of action and the promissory estoppel cause of action.  We therefore affirm.

## ALLEGATIONS OF THE
## THIRD AMENDED COMPLAINT

NHV is a California limited liability company.  VMG is a Delaware corporation.  Dennis D'Alessio is the manager of NHV and the president of VMG.  Cerullo is a California corporation.  Artz is a vice-president of Cerullo and the trustee of Plaza del Sol Real Estate Trust (Plaza del Sol).

Cerullo is a successor lessee under a ground lease of real property in Newport Beach (the Property), the term of which expires in November 2018.  In 2004, Cerullo, as sublessor, entered into a sub-ground lease of the Property (the Sublease) with

3

Newport Harbor Offices & Marina, LLC (NHOM).  The Property had been improved with an office building and marina (the Improvements).  In order to sublease the Property, NHOM obtained a loan for more than $2 million from the Hazel I. Maag Trust (the Maag Trust).

By 2011, NHOM was in default of the sublease for failure to properly maintain the Property and the Improvements.  In March 2011, Cerullo and Plaza del Sol entered into an asset management and option agreement (the Management Agreement) with NHV.  Pursuant to the Management Agreement, Cerullo and Plaza del Sol granted certain irrevocable rights to NHV, including an option to acquire an assignment of the ground lease.  In exchange, NHV agreed to act as asset manager and "perform all duties normally associated with the administration of a sub-lease by the master lessor."  In particular, NHV agreed to (1) "[t]ake all action necessary to enforce the terms of the [Sublease]," including the "filing and prosecution of legal action for Unlawful Detainer"; (2) "serve appropriate Notices of Default and other statutory notices as conditions precedent to any Unlawful Detainer action"; and (3) obtain Cerullo's written permission before commencing legal action against NHOM, the sublessee.  NHV was responsible for the costs of any unlawful detainer action.

Under the Management Agreement, NHV would be responsible for getting NHOM evicted from the Property and the Sublease terminated and, in exchange, would receive an irrevocable option to acquire the sublease and, potentially, an assignment of the ground lease from Cerullo.  In April 2011, NHV, Cerullo, and Plaza del Sol entered into a modification to the Management Agreement, making VMG the asset manager in place of NHV.

Pursuant to the Management Agreement, VMG took action to evict NHOM due to its failure to adequately maintain the Property and the Improvements.  VMG retained Attorney Darryl Paul, who filed an unlawful detainer action against NHOM (the Unlawful Detainer Action).  VMG paid for the costs and expenses of the Unlawful

4

Detainer Action, including attorney fees, costs, expert fees, and appraiser fees. Those costs totaled more than $500,000. As asset manager, VMG spent more than $200,000 for such things as insurance premiums, travel, office supplies, meals, entertaining, accounting, salaries, wages, and service bureau.

In August 2012, Cerullo and Artz entered into a settlement agreement regarding the Unlawful Detainer Action. The settlement agreement was made and signed without the knowledge or approval of Paul, and without the knowledge, participation, or approval of VMG.

Under the settlement agreement, Cerullo and Artz agreed to dismiss the Unlawful Detainer Action against NHOM in exchange for payment of "a substantial sum" by the Maag Trust. The trial of the Unlawful Detainer Action was taken off calendar. Although trial of the Unlawful Detainer Action "remains the subject of ongoing litigation," NHV and VMG contended "there is no certain or predictable outcome in view of the Settlement Agreement." NHV and VMG alleged: "The execution by Defendants of the Settlement Agreement was fraudulent and constitutes a high jacking [*sic*] of the [Unlawful Detainer] Action from the discretion and auspices of Plaintiffs and from the authority and direction of counsel . . . Paul."

The third amended complaint asserted causes of action for breach of written contract, breach of the covenant of good faith, quantum meruit, and promissory estoppel. The third amended complaint alleged that Cerullo and Artz breached the Management Agreement by failing to reimburse VMG for money spent on the Unlawful Detainer Action and in managing the Property and that Cerullo and Artz breached the covenant of good faith of the Management Agreement by failing to make those reimbursements and by settling the Unlawful Detainer Action. NHV and VMG sought recovery under quantum meruit for the benefit their services bestowed on Cerullo and Artz.

In the promissory estoppel cause of action, NHV and VMG alleged that, in March 2011, Artz made oral promises to D'Alessio that NHV and VMG would become

5

the asset manager for the Property and, in exchange for litigating the Unlawful Detainer Action and evicting NHOM, would have an option to acquire the ground lease to the Property and the Improvements.  Those alleged oral promises were made at restaurants in Carlsbad and San Clemente.  (The promises basically mirror the terms of the Management Agreement.)  In reliance on those promises, NHV and VMG agreed to act as asset manager and "undert[ook] the litigation and expense of the [Unlawful Detainer] Action."

## PROCEDURAL HISTORY

VMG initiated this litigation by filing a form complaint for breach of contract and intentional tort in July 2013.  The complaint alleged that Cerullo and Artz breached the Management Agreement and/or interfered with it by "entering into a settlement agreement, and settling unlawful detainer action, in secret, and without P's consent."

A first amended complaint was filed in December 2013.  The first amended complaint added NHV as a plaintiff and asserted causes of action for breach of written contract, breath of the covenant of good faith, breach of fiduciary duty, negligence, fraud, and declaratory relief.  The first amended complaint alleged, "[t]he execution by Defendants of The Settlement Agreement was fraudulent and constitutes a highjacking of The Litigation from the discretion and auspices of Plaintiffs and from the authority and direction of counsel . . . Paul."

NHV and VMG filed a second amended complaint in March 2014.  The second amended complaint had three causes of action—breach of written contract, breach of the covenant of good faith, and fraud.  The second amended complaint included substantially the same references to the settlement agreement as the first amended complaint.

NHV and VMG filed the third amended complaint in June 2015.  Within 60 days, Cerullo and Artz filed the anti-SLAPP motion to the third amended complaint.  In

6

the anti-SLAPP motion, Cerullo and Artz argued that settlement of the Unlawful Detainer Action was an act arising from the right to petition and therefore was protected by the anti-SLAPP statute.  Cerullo and Artz argued that "each of the four causes of action arises from [Cerullo] signing the Purported Settlement in the [Unlawful Detainer] Action."

In opposition, NHV and VMG argued the anti-SLAPP motion was not timely filed because it was not filed within 60 days of the initial complaint, the first amended complaint, or the second amended complaint.  The trial court agreed.  In denying the anti-SLAPP motion, the trial court ruled:  "Defendants' Special Motion to Strike the Third Amended Complaint under CCP § 425.16 is denied as untimely.  The case has been pending for over two years.  The court notes that the Complaint and every pleading filed by Plaintiffs thereafter, all referenced the Settlement Agreement at the heart of Defendants' argument.  Defendants demurred to every pleading filed by Plaintiffs.  They filed a Motion to Strike the Complaint and the Second Amended Complaint.  The court has also heard and ruled on Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment.  Substantial discovery has already taken place.  The court has granted several discovery motions filed by Plaintiffs.  The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill free speech rights at the earliest stage of the case.  That purpose no longer applies at this late stage in the litigation.  [Citations.]"

## REQUESTS FOR JUDICIAL NOTICE

After oral argument, counsel for Cerullo and Artz filed a request for judicial notice of the fact that NHV's corporate status had changed to suspended.  Attached as an exhibit to the request was business entity information from the California Secretary of State showing that as of September 16, 2016, NHV's status was "FTB SUSPENDED." NHV then filed a request for judicial notice of (1) a certificate of revivor for NHV issued by the California Franchise Tax Board on October 6, 2016 and (2) business entity detail

from the California Secretary of State's Web site reflecting that, as of October 7, 2016, NHV's status was "ACTIVE." We grant both requests for judicial notice.

The certificate of revivor for NHV states, "[t]his Limited Liability Company was relieved of suspension or forfeiture and is now in good standing with the Franchise Tax Board." Because NHV is now a corporation in good standing, it may defend and participate in this action. (See *Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 513.) NHV was ineligible to appear at oral argument because at that time NHV was a suspended corporation. But counsel appearing for NHV also represented VMG at oral argument and therefore could appear and argue. Cerullo and Artz argue NHV cannot proceed because it did not seek a continuance to secure a revivor. Although the "'normal practice'" is for the court to grant a short continuance to enable the suspended corporation to obtain reinstatement (*id.* at p. 512), the suspended corporation is not required to ask for a continuance for that purpose.

## DISCUSSION

### I.

### Background Law and Standard of Review

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16(b)(1).)

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant

8

must establish that the challenged claim arises from activity protected by [Code of Civil Procedure] section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.' [Citation.]" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385, fn. omitted.)

We review an order granting or denying an anti-SLAPP motion under the de novo standard. (*Karnazes v. Ares* (2016) 244 Cal.App.4th 344, 351.)

**II.**

**The Anti-SLAPP Motion Was Untimely as to the Breach of Contract and Breach of Implied Covenant Causes of Action.**

A. *General Analysis of Timing of Anti-SLAPP Motion*

Section 425.16(f) states, "[t]he special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Section 425.16(f) imposes a time limit for bringing an anti-SLAPP motion; that is, "[a] party may not file an anti-SLAPP motion more than 60 days after the filing of the complaint, unless the trial court affirmatively exercises its discretion to allow a late filing." (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 775.)

The term "the complaint" in section 425.16(f) has been interpreted to include amended complaints. (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 840.) Key to the decision in *Lam* is the concern a plaintiff could circumvent the anti-SLAPP statute if amended complaints were not subject to anti-SLAPP motions: "Primarily, the purpose of

9

the anti-SLAPP suit law would be readily circumventable if a defendant's only opportunity to strike meritless SLAPP claims were in an attack on the original complaint. Causes of action subject to a special motion to strike could be held back from an original complaint . . . . [¶] In context, the 'special' anti-SLAPP suit motion is directed at a particular document, namely 'the complaint.' It would make no sense to read 'complaint' to refer to an earlier complaint that contained no anti-free-speech claims, but not allow such a motion for a later complaint that had been amended to contain some. After all, the whole purpose of the statute is to provide a mechanism for the *early* termination of claims that are improperly aimed at the exercise of free speech or the right of petition." (*Id.* at pp. 840-841.)

Cerullo and Artz argue an interpretation of the term "the complaint" to include an amended complaint is absolute and means the filing of any amended complaint automatically reopens the period for bringing an anti-SLAPP motion. We disagree and follow the rule, expressed by the Court of Appeal in *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, which recognizes the anti-SLAPP statute's purpose and the need to prevent gamesmanship by both the plaintiff and the defendant. In *Hewlett-Packard Co. v. Oracle Corp.*, the Court of Appeal stated: "The rule that an amended complaint reopens the time to file an anti-SLAPP motion is intended to prevent sharp practice by plaintiffs who might otherwise circumvent the statute by filing an initial complaint devoid of qualifying causes of action and then amend to add such claims after 60 days have passed. [Citation.] But a rule properly tailored to that objective would permit an amended pleading to extend or reopen the time limit only as to *newly pleaded* causes of action arising from protected conduct. A rule automatically reopening a case to anti-SLAPP proceedings upon the filing of *any* amendment permits defendants to forgo an early motion, perhaps in recognition of its likely failure, and yet seize upon an amended pleading to file the same meritless motion later in the action, thereby securing

10

the 'free time-out' condemned in [*People ex rel. Lockyer v.*] *Brar* [(2004)] 115 Cal.App.4th 1315, 1318." (*Id.* at p. 1192, fn. 11.)

Cerullo and Artz rely on *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 313, 315 (*Yu*), in which the Court of Appeal concluded an anti-SLAPP motion filed within 60 days of service of a third amended complaint was timely, even though the motion could have been filed at the outset of the case. "Admittedly," the *Yu* court stated, "this is not a case where an anti-SLAPP motion was promptly made to counter SLAPP allegations first added to an amended pleading" and the defendants' anti-SLAPP theory appeared to have been "an afterthought." (*Id.* at p. 315.)

But the holding in *Yu* is not as clear-cut as Cerullo and Artz portray it to be. The plaintiffs in *Yu* had argued the anti-SLAPP statute did not permit an anti-SLAPP motion to be filed, without leave of the court, more than 60 days after service of the original complaint. (*Yu*, *supra*, 103 Cal.App.4th at p. 313.) The *Yu* court agreed with *Lam v. Ngo* that the word "complaint" in the anti-SLAPP statute included an amended complaint. (*Yu*, *supra*, at p. 314.) The *Yu* court noted, however, it was "unclear" under the plaintiffs' construction of the anti-SLAPP statute when the defendants would have been entitled as a matter of right to file their motion because the original complaint had never been served and an amended complaint, filed shortly after the original one, was the first complaint to be served. (*Ibid.*)

We disagree with *Yu* to the extent it holds that a defendant has an absolute right to file an anti-SLAPP motion to an amended complaint, even when the motion could have been brought against an earlier complaint. "The Legislature enacted [Code of Civil Procedure] section 425.16 to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources' [citation], the Legislature sought "'to prevent SLAPPs by ending them early and without

11

great cost to the SLAPP target"' [citation]." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) The argument advanced by Cerullo and Artz would encourage gamesmanship that could defeat rather than advance that purpose.

We therefore conclude a defendant must file an anti-SLAPP motion within 60 days of service of the first complaint (or cross-complaint, as the case may be) that pleads a cause of action coming within section 425.16(b)(1) unless the trial court, in its discretion and upon terms it deems proper, permits the motion to be filed at a later time (§ 425.16(f)). An amended complaint reopens the time to file an anti-SLAPP motion without court permission only if the amended complaint pleads new causes of action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion.

B. *Application of Timing Rule to This Case*

In this case, the anti-SLAPP motion challenged the third amended complaint on the ground that settlement of the Unlawful Detainer Action was an act arising from the right to petition and that "each of the four causes of action arises from [Cerullo and Artz] signing the Purported Settlement in the [Unlawful Detainer] Action." On appeal, Cerullo and Artz argue that each cause of action in the third amended complaint arose out of the protected activity of signing the settlement of the Unlawful Detainer Action.

Settlement of the Unlawful Detainer Action was first alleged in the initial complaint, which asserted causes of action for breach of contract and intentional tort. Settlement of the Unlawful Detainer Action was pleaded again in the first amended complaint and again in the second amended complaint. The first amended complaint and the second amended complaint included causes of action for breach of contract and breach of the implied covenant of good faith.

Cerullo and Artz could have filed anti-SLAPP motions against any of those complaints on the ground that settling the Unlawful Detainer Action constituted protected

12

activity under section 425.16(e). They did not do so. Instead, they waited until the third amended complaint, by which time they had brought (1) a demurrer to and motion to strike the initial complaint, (2) a demurrer to the first amended complaint, (3) a demurrer to, motion to strike, motion for judgment on the pleadings, and motion for summary judgment on, the second amended complaint, and (4) a demurrer to the third amended complaint. The parties had engaged in extensive discovery and the trial court had ruled on several discovery motions. Entertaining the anti-SLAPP motion would have defeated rather than advanced the anti-SLAPP's statute's "central purpose" of "screening out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery." (*Baral v. Schnitt*, *supra,* 1 Cal.5th at p. 392; see *Platypus Wear, Inc. v. Goldberg*, *supra*, 166 Cal.App.4th at p. 776 [purpose of anti-SLAPP statute is "ensuring the *prompt* resolution of lawsuits that impinge on a defendant's free speech rights"]; *Kunysz v. Sandler* (2007) 146 Cal.App.4th 1540, 1543 ["the purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case"].)

Cerullo and Artz did not file the anti-SLAPP motion within 60 days of service of the initial complaint, the first amended complaint, or the second amended complaint. They did not seek leave of court to file a late anti-SLAPP motion. The trial court did not err by denying the anti-SLAPP motion as untimely—at least as to the causes of action for breach of contract and breach of the implied covenant of good faith, which appeared in earlier complaints.

The third amended complaint added two causes of action not before pleaded: quantum meruit and promissory estoppel. The quantum meruit cause of action alleged that NHV and VMG performed services under the Management Agreement which resulted in benefit to Cerullo and Artz for which NHV and VMG should be compensated. The promissory estoppel cause of action was premised on alleged oral promises made by Artz to D'Alessio that NHV and VMG would become the asset

13

manager for the Property and, in exchange for litigating the Unlawful Detainer Action and evicting NHOM, would have an option to acquire the ground lease to the Property and the Improvements.

The anti-SLAPP motion was timely as to the quantum meruit and promissory estoppel causes of action. To conclude otherwise would allow NHV and VMG to circumvent the purpose of the anti-SLAPP statute by holding back those two causes of action from earlier complaints. (*Lam v. Ngo*, *supra*, 91 Cal.App.4th at pp. 840-841.) An anti-SLAPP motion to the initial complaint, the first amended complaint, or the second amended complaint, even if successful, would not have prevented NHV and VMG from bringing a lawsuit for quantum meruit and promissory estoppel. That is because an earlier anti-SLAPP motion would not necessarily have resolved whether NHV and VMG could demonstrate the probability of prevailing on their claims for quantum meruit and promissory estoppel.

### III.

### NHV and VMG Made a Prima Facie Showing on the Quantum Meruit and the Promissory Estoppel Causes of Action.

The first prong of the anti-SLAPP procedure—whether the challenged claims arose from activity protected by section 425.16—is not in dispute. Cerullo and Artz argue the causes of action of the third amended complaint arise out of the act of settling the Unlawful Detainer Action, which is an act in furtherance of their right of petition. (§ 425.16(e).) NHV and VMG do not contend otherwise.

In the second prong of the anti-SLAPP procedure, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.) That issue was fully briefed before the trial court and on appeal. In view of its decision on timeliness, however, the trial court did not reach the question "whether the plaintiff has stated a legally sufficient claim and made a

14

prima facie factual showing sufficient to sustain a favorable judgment." (*Id.* at pp. 384-385.) The standard of review is de novo (*Karnazes v. Ares*, *supra*, 244 Cal.App.4th at p. 351), meaning we are in as good a position as the trial court to make that inquiry.

A. *Quantum Meruit*

Cerullo and Artz contend NHV and VMG did not state a legally sufficient claim for quantum meruit because (1) the quantum meruit cause of action was time-barred and (2) the quantum meruit allegations were inconsistent with the breach of contract allegations.

The statute of limitations for quantum meruit claims is two years. (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 452.) Cerullo and Artz argue, with no disagreement from NHV and VMG, that the quantum meruit cause of action accrued, and the statute of limitations began to run, in August 2012, when the Unlawful Detainer Action was settled. NHV and VMG filed the third amended complaint in June 2015, nearly three years later.

NHV and VMG contend the third amended complaint relates back to earlier complaints for statute of limitations purposes, making the quantum meruit cause action timely. An amended complaint is considered a new action for purposes of the statute of limitations only if the claims do not "relate back" to an earlier timely filed complaint. (*Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 276.) Under the relation-back doctrine, an amendment relates back to the original complaint if the amendment (1) rests on the same general set of facts; (2) involves the same injury; and (3) refers to the same instrumentality. (*Norgart v. Upjohn Co*. (1999) 21 Cal.4th 383, 408-409.) An amended complaint relates back to an earlier complaint if the amended complaint is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action. (*Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934, 936.)

15

The general set of facts forming the basis for the quantum meruit cause of action is included in the second amendment complaint, which was filed in March 2014. The second amended complaint alleged that VMG retained and paid for counsel to prosecute the Unlawful Detainer Action, paid for all of the costs and expenses of the Unlawful Detainer Action (which totaled more than $500,000), and spent over $200,000 for expenses as asset manager. The second amended complaint alleged that Cerullo settled the Unlawful Detainer Action without the knowledge of VMG and that Cerullo received "payment of a substantial sum" in exchange for dismissing the Unlawful Detainer Action. Those same allegations, the same injury, and the same instrumentality form the basis for the quantum meruit cause of action in the third amended complaint.

Thus, the quantum meruit cause of action relates back to the second amended complaint for statute of limitations purposes. Because the second amended complaint was filed within two years of August 2012, the quantum meruit cause of action is timely.

As Cerullo and Artz contend, the breach of contract cause of action and quantum meruit cause of action are inconsistent. Quantum meruit recovery is inconsistent with recovery for breach of written contract. (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419.) "A quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice. [Citation.] However, it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." (*Ibid.*)

NHV and VMG had the obligation under the Management Agreement of paying for the costs of the Unlawful Detainer Action. In the quantum meruit cause of action, NHV and VMG seek to recover those costs from Cerullo and Artz. Quantum meruit recovery that is contrary to an express contractual term is not allowed. (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, *supra*, 41 Cal.App.4th at p. 1419.)

16

But NHV and VMG were permitted to plead inconsistent counts. "When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations." (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402.) "The plaintiff remains free to allege any and all 'inconsistent counts' that a reasonable attorney would find legally tenable on the basis of the facts known to the plaintiff at the time." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 691.) Thus, a plaintiff may plead inconsistent causes of action for breach of contract and common count. (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 407, p. 546.) NHV and VMG cannot recover for both breach of contract and quantum meruit (see *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, *supra*, 41 Cal.App.4th at pp. 1419-1420), but they can plead both causes of action. Nothing in the anti-SLAPP statute required NHV and VMG to make an election between the breach of contract and quantum meruit causes of action in response to the anti-SLAPP motion.[4]

Cerullo and Artz argue in their reply brief that the quantum meruit claim fails because, in opposition to the anti-SLAPP motion, NHV and VMG did not produce evidence they spent any money performing their obligations as asset manager. Cerullo and Artz waived that argument by not presenting it in their opening brief. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428.) The argument also has no merit. D'Alessio submitted a declaration in opposition to the anti-SLAPP motion. At paragraph 14 of that declaration, D'Alessio stated he "incurred thousands of

---

[4] At some point, NHV and VMG might have to elect between a breach of contract remedy and a quantum meruit remedy. (4 Witkin, Cal. Procedure, *supra*, Pleading, § 409, pp. 547-548.) But that point is not now. "'Plaintiff is entitled to introduce his evidence upon each and all of these causes of action, and the election, or in other words the decision as to which of them is sustained, is, after the taking of all the evidence, a matter for the judge or the jury.'" (*Id.*, § 406, p. 545, quoting *Tanforan v. Tanforan* (1916) 173 Cal. 270, 274.)

17

dollars in fees and costs" in preparing for the trial of the Unlawful Detainer Action and "incurred well over $700,000 in expenses while Asset Manager." In the same paragraph, D'Alessio declared that "[a]s of April 2014, the total costs and expenses I incurred as Asset Manager total no less than $791,605.73." Although the declaration is not drafted as precisely and directly as might be desirable (e.g., D'Alessio does not state that he "spent money" or "wrote checks" in certain amounts), a fair reading of the declaration is that D'Alessio spent no less than $791,605.73 as asset manager.

B. *Promissory Estoppel*

Cerullo and Artz contend that NHV and VMG did not state a legally sufficient claim for promissory estoppel because (1) the promissory estoppel cause of action was time-barred under a two-year statute of limitations, (2) the promissory estoppel allegations were inconsistent with the breach of contract allegations, and (3) NHV and VMG failed to produce evidence of a prima facie factual showing sufficient to sustain a favorable judgment.

The statute of limitations for promissory estoppel based on oral promises is two years. (§ 339, subd. 1.)[5] The promissory estoppel cause of action accrued in August 2012, as did the quantum meruit cause of action, when the Unlawful Detainer Action was settled. Although the third amended complaint was filed more than two years later, the

---

[5] The applicable statute of limitations is determined by the nature of the right sued upon rather than the form of the action or the relief demanded. (*Day v. Greene* (1963) 59 Cal.2d 404, 411.) The California Supreme Court accordingly has held that where the primary purpose of an equitable cause of action is to recover money under a contract, the statute of limitations applicable to contract actions governs the equitable claim. (*Jefferson v. J. E. French Co.* (1960) 54 Cal.2d 717, 718-719 [accounting action was subject to the two-year statute of limitations of section 339 because "the primary purpose of the action [was] to recover money under the oral contract" and the "accounting [was] merely ancillary to the perfection of plaintiff's right under the oral contract"].) In this case, NHV and VMG's claim for promissory estoppel is closest in nature to a claim of breach of oral contract and, therefore, the two-year period of section 339, subdivision 1 (action on an obligation not in writing) is applicable.

promissory estoppel cause of action relates back, for statute of limitations purposes, to the second amended complaint or the first amended complaint. The third amended complaint alleged Artz made a series of promises to D'Alessio at restaurants in Carlsbad and San Clemente in March 2011. Those promises were substantially the same as the terms of the Management Agreement, the existence and terms of which were alleged in the prior complaints. The relief sought by the promissory estoppel cause of action (amounts spent as asset manager) is essentially the same as the relief sought by the breach of contract cause of action in the prior complaints.

As we explained above, an amended complaint relates back to an earlier complaint if the amended complaint is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action. (*Smeltzley v. Nicholson Mfg. Co.*, *supra*, 18 Cal.3d at pp. 934, 936.) The promissory estoppel cause of action, though a new cause of action, was based on generally the same facts as the prior complaints, related back to those complaints, and therefore was not barred by a two-year statute of limitations.

Cerullo and Artz contend the promissory estoppel cause of action is inconsistent with the breach of contract cause of action. Although they are correct, NHV and VMG could plead inconsistent causes of action. Promissory estoppel is an equitable claim that substitutes reliance on a promise as a substitute for bargained-for consideration. (*Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1412-1413.) Promissory estoppel does not apply if the promisee gave actual consideration and, therefore, a cause of action for promissory estoppel is inconsistent with a cause of action for breach of contract based on the same facts. (*Id.* at p. 1413.) But "'[w]hen a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations.'" (*Ibid.*) At this stage, NHV and VMG do not have to elect between a

19

promissory estoppel remedy and a breach of contract remedy. (4 Witkin, Cal. Procedure, *supra*, Pleadings, §§ 406, 409.)

Finally, we conclude that NHV and VMG met their burden of making a prima facie factual showing on the promissory estoppel cause of action. The elements of promissory estoppel are (1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person, and (4) injustice can be avoided only by enforcement of the promise. (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.)

Cerullo and Artz contend that NHV and VMG failed to produce evidence of promises made to D'Alessio and that the evidence presented in connection with the anti-SLAPP motion proved that no promises were made. In his declaration submitted in opposition to the anti-SLAPP motion, D'Alessio stated that he had met with Artz in March 2011 to discuss NHOM's default under the Sublease. D'Alessio declared that he and Artz had "c[o]me to a solution" by which NHV "agreed to take the necessary actions to evict NHOM for its Default" and, in exchange, "[Cerullo] would assign the ground lease that it has with the Property owner . . . to me (NHV), so that I could take over the Property and Improvements once NHOM was evicted and have the opportunity to operate a successful business venture at the Property."

Cerullo and Artz argue D'Alessio's declaration failed to set forth any promises made by Artz. An agreement is an exchange of promises. (E.g., *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.*, *supra*, 188 Cal.App.4th at pp. 421-422.) D'Alessio's declaration, by setting forth agreements made at the meeting between D'Alessio and Artz, also set forth promises made at that meeting.

In support of the anti-SLAPP motion, Cerullo and Artz submitted portions of the transcript of D'Alessio's deposition taken in November 2011 in connection with the Unlawful Detainer Action. During the deposition, D'Alessio was asked whether he

20

had an agreement with Cerullo or Plaza del Sol as to what would happen to the Property and the Improvements if Cerullo prevailed in the Unlawful Detainer Action. D'Alessio responded: "Other than what we've already talked about, no. No agreement." Cerullo and Artz contend this testimony defeats any claim that promises were made to D'Alessio. D'Alessio's deposition testimony does not defeat the promissory estoppel cause of action as a matter of law (*Baral v. Schnitt*, *supra*, 1 Cal.5th at pp. 384-385) because D'Alessio testified there were other agreements "we've already talked about."

Moreover, in assessing the anti-SLAPP motion, we accept as true NHV and VMG's evidence, which included D'Alessio's declaration. That evidence established the promissory estoppel cause of action has "'the requisite minimal merit'" to proceed. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 385.)

**DISPOSITION**

The order denying the anti-SLAPP motion is affirmed. Respondents shall recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

21

Filed 12/22/2016

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NEWPORT HARBOR VENTURES, LLC, et al., <br><br>     Plaintiffs and Respondents, <br><br>       v. <br><br> MORRIS CERULLO WORLD EVANGELISM et al., <br><br>     Defendants and Appellants. | G052660 <br><br> (Super. Ct. No. 30-2013-00665314) <br><br> ORDER GRANTING REQUEST FOR PUBLICATION |

        Appellants have requested that our opinion, filed on November 30, 2016, be certified for publication.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2)-(6).  The request is GRANTED.  The opinion is ordered published in the Official Reports.

FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.