Filed 8/31/21  Wymont Services Limited v. Handal & Associates CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WYMONT SERVICES LIMITED et al., | |
| Plaintiffs and Appellants, | G059353 |
| v. | (Super. Ct. No. 30-2017-00920613) |
| HANDAL & ASSOCIATES, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge.  Affirmed.

Bremer Whyte Brown & O'Meara, Nicole Whyte and Benjamin J. Price; Newmeyer & Dillion, Gregory L. Dillion, J. Nathan Owens and Jason Moberly Caruso for Plaintiffs and Appellants.

Murchson & Cumming, Anton N. Handal; Freeman Mathis & Gary, Frances M. O'Meara and Diana Leon for Defendants and Respondents.

\*          \*          \*

Based on events that occurred during an underlying matter, appellants Wymont Services Limited, et al. (the Wymont entities) sued respondents Handal & Associates, Inc., and attorney Anton Handal (collectively H&A), for legal malpractice. H&A cross-complained, seeking $5 million in attorney fees under contractual theories of relief. In due course, H&A amended their cross-complaint to include a cause of action for false promise. The Wymont entities demurred successfully, and H&A amended their complaint again, adding additional facts. The Wymont entities then filed a special motion to strike under Code of Civil Procedure section 425.16[1] (the anti-SLAPP statute) more than three months after H&A had amended their cross-complaint to add a cause of action for false promise. Pursuant to section 425.16, subdivision (f), anti-SLAPP motions must be filed within 60 days of service of a challenged pleading. Under relevant case law, the trial court found appellants' motion untimely, and we agree. We therefore affirm the court's order denying the motion.

H&A also requests attorney fees, which are appropriate if a defendant (or cross-defendant) files a frivolous appeal solely for the purpose of causing delay. While we squarely reject the Wymont entities' argument that such fees are never available on appeal, we find the appeal, while lacking merit, does not qualify as frivolous, and therefore deny H&A's request.

I

FACTS

*Background*

The underlying case has visited this court twice. (See *Lindsey v. Conteh* (2017) 9 Cal.App.5th 1296 (*Lindsey I*) and *Lindsey et al. v. Conteh et al.* (Jan. 18, 2019, G054219) [nonpub. opn.] (*Lindsey II*).) This court has also decided an anti-SLAPP

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

appeal in a related case (*Conteh et al. v. Wymont Services Limited et al.* (Nov. 14, 2019, G057161) [nonpub. opn.] (*Conteh*)). For brevity's sake, we provide only the facts critical to the particular issues in this appeal. A more complete background can be found in the prior opinions, particularly *Lindsey I.*

Very briefly, Alieu B. M. Conteh formed African Wireless, Inc. (AWI), in 1990 as a Delaware corporation. In 1997, he formed Congolese Wireless Network SPRL (Congolese Wireless) under the laws of the Democratic Republic of the Congo. AWI was principally a holding company for a 60 percent interest in Congolese Wireless. (*Lindsey I, supra*, 9 Cal.App.5th at p. 1299.) As of 2018, the Wymont entities, which was composed of Wymont Services Ltd., James R. Lindsey (as trustee of the Lindsey Family Trust), William Buck Johns, and Marc Van Antro, were minority shareholders, represented by Jonathan B. Sandler. (*Conteh, supra*, G057161.)

In 2017, the Wymont entities and other parties filed the *Lindsey* action as a shareholder derivative suit on behalf of AWI as well as on their own behalf, alleging a long history of malfeasance on Conteh's part. (*Lindsey II, supra*, G054219.) H&A represented the Wymont entities.

To make a very long story short, the case resulted in terminating sanctions against Conteh and related defendants, resulting in a default judgment of approximately $93 million and the creation of a constructive trust on behalf of AWI. Conteh and related defendants were ordered to turn over certain shares and companies. Conteh and the related defendants appealed, and we ultimately affirmed the judgment. (*Lindsey II, supra*, G054219.) Collection efforts, unfortunately, led to more disputes. (*Conteh, supra*, G057161.)

*The Alleged Malpractice*

According to the Wymont entities' amended complaint in the instant matter, H&A committed malpractice by filing complaints in the *Lindsey* action that did

3

not specify the amount of damages, but sought damages in an amount to be proved at trial. After the default judgment was entered in *Lindsey*, the court warned the plaintiffs in the matter "that the relief on default could not exceed the amount demanded in the complaint." According to the Wymont entities, H&A did not seek their consent to proceed without amending the complaint, nor did H&A explain the risks and consequences of failing to state a specific amount of damages.

The default prove-up proceeded with the complaint that alleged damages according to proof at trial. Thus, according to the Wymont entities, their judgment against Conteh and the related parties constituted a constructive trust instead of damages of at least $530 million, plus costs and attorney fees.

*Relevant Procedural History of the Instant Case*

On May 16, 2017, while the underlying litigation was still pending, the Wymont entities filed the instant malpractice case. On August 3, 2017, the trial court ordered the malpractice action stayed pending this court's decision in the *Lindsey* case.

Despite the stay, H&A filed an answer and a cross-complaint on August 9, 2017. As relevant here, the cross-complaint alleged that based on the parties' retainer agreement, under either a breach of contract or anticipatory breach theory, the Wymont entities owed H&A $5 million.

This court decided *Lindsey II* in January 2019. (*Lindsey II*, *supra*, G054219.) The trial court lifted the stay on May 31. In September 2019, the Wymont entities filed a first amended complaint, alleging causes of action for negligence and breach of contract, both on their own behalf and derivatively of AWI. The first amended complaint demanded "[d]amages according to proof of not less than $599 million" on the negligence claim and "[d]amages of not less than $521,000" on the breach of contract claim, representing "fees and costs paid to [H&A] which were higher than the value of the legal services" received.

4

H&A filed a first amended cross-complaint was filed on December 4, 2019. The first amended cross-complaint alleged six causes of action, including a cause of action for false promise. As pertinent here, the false promise claim (which incorporated facts from elsewhere in the first amended cross-complaint) alleged that as of 2014, H&A agreed to represent the Wymont entities for a reduced monthly fee plus a percentage of any recovery, which the first amended cross-complaint referred to as the "Handal Fee."

According to H&A, it produced numerous drafts of a written fee agreement, which the Wymont entities did not sign. They nonetheless paid the reduced fee in the amounts they had agreed to. Eventually, the Wymont entities produced their own proposed retainer agreement, which incorporated a second document called the common interest agreement. H&A executed the agreement. H&A alleged that it vigorously represented the Wymont entities in the Lindsey action, including obtaining sanctions for discovery abuse, and secured an enforceable judgment for approximately $93 million. Thereafter, and according to H&A, in anticipation of the almost $5 million contingency fee owed, the Wymont entities attempted to terminate H&A's representation.

The false promise cause of action alleged:[2]

"35. Handal alleges that the Cross-Defendants fraudulently promised to compensate it the full amount of the Handal Fee in exchange for Handal agreeing to represent them in the Underlying Shareholder Derivative Action. Handal alleges that Cross-Defendants did not intend to perform their promise when they made it. Cross-Defendants made the alleged false promises with the intent of inducing Handal's reliance thereon.

"36. Handal reasonably relied on the Cross-Defendants' false promise because of a long relationship it had with Lindsey and the Cross-Defendants' promise to

---

[2] In the interest of quoting the exact language, we leave the allegations unchanged. "Cross-Defendants" refers to the Wymont entities, and "Handal" collectively refers to H&A.

make regular maintenance fee payments, which were significantly lower than Handal would have earned had it undertaken the engagement on its standard hourly rates.

"37. When Handal's performance was complete, the Cross-Defendants failed and refused to pay the Handal Fee resulting in harm to Handal.

"38. Handal was damaged as a result of the Cross-Defendants' false promise to compensate it the Handal Fee after undertaking to represent them in the Underlying Shareholder Derivative Action. Handal's reliance on the Cross-Defendants' false promise proximately caused it to refuse other business or opportunities and consequently to lose revenue in addition to not receiving the promised Handal Fee. Handal's damages will be proven at trial but is believed to exceed $4,685,000."

The Wymont entities demurred to the first amended cross-complaint, including the false promise cause of action. The stated grounds were failure to state a claim on which relief may be granted and that the cause of action was based on a "sham" allegation. (§ 430.10, subd. (e).)

The trial court sustained the demurrer to this cause of action, stating: "A cause of action for promissory fraud (aka false promise) requires the plaintiff to allege (1) a precise promise to do something in the future, (2) lack of intention to do so at the time the promise was made, (3) the promise was intended to deceive and induce reliance, (4) that it did induce reliance, and (5) that this reliance resulted in damages. [Citations.] Since Handal concedes that cross-defendants paid $315,000.00 in fees, there is no factual basis from which to find that cross-defendants had no intention of honoring any agreement when it was entered. There are no facts alleged to show an absence of intent to perform." The court granted leave to amend.

H&A filed its second amended cross-complaint on March 3, 2020, adding additional facts to its claim for false promise. The false promise claim was amended to be far more specific and to address the court's concern regarding prior payments:

6

"30. Handal alleges that in exchange for Handal agreeing to represent them in the Underlying Shareholder Derivative Action, Cross-Defendants promised to compensate Handal the Handal Fee, which included monthly maintenance payments on regular intervals plus contingency fees equal to a percentage of the sale of their individual ownership interests in AWI or Congolese Wireless Network ('CWN') and a percentage of any net recovery against the Defendants in the Underlying Shareholder Derivative Action (hereafter 'the Contingency Fee'). The Cross-Defendants, and each of them, made their promises and representations to pay the Contingency Fee to Anton Handal on behalf of H&A on a number of occasions including during meetings between March 30 - 31, 2015, at the AKA Whitehouse, located at 1710 H Street NW, Washington DC. Cross-Defendants also represented to Anton Handal on behalf of H&A that they would pay the Contingency Fee on May 6, 2015 in the form of a spreadsheet prepared by Wymont and Lindsey that set forth the Contingency Fees payable to H&A and again on July 1, 2015 to Anton Handal at the offices of Haight Brown Bonesteel, in Irvine California.

"31. Handal alleges that Cross-Defendants promises and representations to pay the Contingency fee were false and that they never intended to perform their promise to pay the Contingency fee portion of the Handal Fee. Handal further alleges that the Cross-Defendants made these false promises in order to induce Handal to undertake and continue to prosecute the Underlying Shareholder Derivative Action for the reduced maintenance payment instead of taking the case on an agreed hourly rate basis.

"32. Handal reasonably relied on the Cross-Defendants' false promises because of a long relationship it had with Lindsey and their partial performance in making the regular maintenance fee payments, which were significantly lower than Handal would have earned had it undertaken the engagement on the negotiated and agreed hourly rates set forth in the Cross-Defendants' Retainer Agreement.

"33. Handal did not learn the Cross-Defendants' real intent until a series of meetings it had with Lindsey and Jonathan Sandler on behalf of Wymont, after H&A had

7

successfully secured a judgment in AWI's favor. During those meetings, which occurred during the first week of September 2016, Handal was asked to defraud its malpractice carrier on behalf of the Cross-Defendants so that the proceeds from a bogus malpractice claim could be used to pay a portion of the Cross-Defendants' Contingency Fee obligation so that the Cross-Defendants would not have to fulfill their promises to Handal or pay him themselves. Handal refused.

"34. When Handal's performance was complete, the Cross-Defendants failed and refused to pay the Contingency Fee portion of the Handal Fee resulting in harm to Handal. Handal was damaged as a result of the Cross-Defendants false promises to compensate it the full Handal Fee after undertaking to represent them in the Underlying Shareholder Derivative Action, because it agreed to forego payments of fees on the negotiated and agreed hourly rates set forth in the Cross-Defendants' Retainer Agreement. H&A believes the fees earned under the agreed hourly rates would have totaled no less than $4,685,000. Handal's reliance on the Cross-Defendants' false promise also proximately caused it to refuse other business or opportunities and consequently lose revenue in addition to not receiving the promised Handal Fee. Handal's damages will be proven at trial but is believed to exceed $4,685,000.

"35. Cross-Defendants' conduct was willful, malicious, and fraudulent in that they intentionally defrauded Handal into prosecuting the Underlying Shareholder Derivative Claim for what they knew was less than Handal's regular hourly rates on the promise that Handal would receive the Contingency Fee. Cross-Defendants' conduct was malicious and fraudulent as evidenced by their attempt to conspire with Handal to file a false insurance claim in violation of California Penal Code § 550 or other applicable provisions of law. Such conduct justifies an award against the Cross-Defendants of punitive and exemplary damages in an amount to be proven at trial but not less than 3 times the amount of Handal's damages."

8

The Wymont entities filed the instant anti-SLAPP motion on March 25, 2020.  They moved to strike both the entire false promise cause of action as well as paragraphs 33 and 35.  The Wymont entities argued H&A's claims arose from settlement discussions that took place in September 2016 and were therefore subject to the anti-SLAPP statute.  On July 21, 2020, they filed what they characterized as a "supplemental" memorandum of points and authorities on the anti-SLAPP motion.

H&A opposed, arguing both the substance as well as that the motion was untimely.  The Wymont entities filed a reply and 18 objections to H&A's evidence.

The trial court denied the motion on the basis that the motion was untimely.  The Wymont entities now appeal.

II

DISCUSSION

*Relevant Law and Standard of Review*

The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case.  (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)  "An anti-SLAPP motion is not a vehicle for a defendant to obtain a dismissal of claims in the middle of litigation; it is a procedural device to prevent costly, unmeritorious litigation at the initiation of the lawsuit."  (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 625-626.)

"'The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper.  The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.'  (§ 425.16, subd. (f).)  The purpose of the time limitation is to permit '"the

9

defendant to test the foundation of the plaintiff's action before having to 'devote its time, energy and resources to combating' a 'meritless' lawsuit. . . .'" [Citation.] The statutory deadline also seeks "'to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings.'" [Citation.] All discovery is automatically stayed once an anti-SLAPP motion is filed. (§ 425.16, subd. (g).)" (*San Diegans for Open Government v. Har Construction, Inc.*, *supra*, 240 Cal.App.4th at p. 624.)

We review an order granting or denying an anti-SLAPP motion de novo. (*Karnazes v. Ares* (2016) 244 Cal.App.4th 344, 351.) This standard also applies to the question of whether the motion was timely. (*Starview Property, LLC v. Lee* (2019) 41 Cal.App.5th 203, 208 (*Starview Property*).)

*Timeliness*

The anti-SLAPP motion at issue here was filed on March 25, 2020. While this was within 60 days of the filing of the second amended cross-complaint, which was filed on March 3, 2020, it was over 90 days from the first time the false promise cause of action appeared in the first amended cross-complaint, which was filed on December 4, 2019. Thus, we must examine the relevant law to determine which cross-complaint triggered the 60-day limit.

As noted above, an anti-SLAPP "motion may be filed within 60 days of the service of the complaint." (§ 425.16, subd. (f).) The word "complaint," in this context, "has been interpreted to include amended complaints." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1217) (*Newport I*).) The purpose behind this interpretation is "to prevent sharp practice by plaintiffs who might otherwise circumvent the statute by filing an initial complaint devoid of qualifying causes of action and then amend to add such claims after 60 days have passed." (*Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1192, fn. 11.)

But not *any* amendment to the complaint will suffice to restart the 60-day period during which a defendant may file an anti-SLAPP motion. "a defendant must file an anti-SLAPP motion within 60 days of service of the first complaint (or cross-complaint, as the case may be) that pleads a cause of action coming within [the anti-SLAPP statute] unless the trial court, in its discretion and upon terms it deems proper, permits the motion to be filed at a later time (§ 425.16(f))." (*Newport I*, *supra*, 6 Cal.App.5th at p. 1219.) "An amended complaint reopens the time to file an anti-SLAPP motion without court permission only if the amended complaint pleads new causes of action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion." (*Ibid.*)

In its review of the *Newport* case, the California Supreme Court agreed: "[S]ection 425.16, subdivision (f), should be interpreted to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion)." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 645.)

"By its terms, the anti-SLAPP statute is directed at striking *causes of action*, not merely factual allegations." (*Starview Property*, *supra*, 41 Cal.App.5th at p. 209.) "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity *that merely provide context, without supporting a claim for recovery*, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394, italics added.)

With these principles in mind, we examine the differences between the false promise claim in the first and second amended cross-complaints. The first amended cross-complaint's false promise claim included few specifics and required a contextual understanding of the rather complex facts of the case to understand what H&A was

11

attempting to allege. It referred to "the full amount of the Handal Fee," and claimed the Wymont entities never intended to pay the full amount, and in fact did not pay it. Understanding what this meant required referring back to the general factual allegations at the beginning of the complaint, which explained that fee was comprised of "reduced fee paid monthly plus a percentage of any recovery."

The trial court's ruling on the demurrer to the first amended cross-complaint reflected the lack of precision in H&A's pleading, noting that "Since Handal concedes that cross-defendants paid $315,000.00 in fees, there is no factual basis from which to find that cross-defendants had no intention of honoring any agreement when it was entered." It was unclear that H&A was not alleging that the Wymont entities had not intended to pay any part of the allegedly agreed-upon fees, but the contingent fee portion in particular. The court also stated: "There are no facts alleged to show an absence of intent to perform."

The second amended cross-complaint set out to fix these deficiencies. It begins by explaining that the Handal fee "included monthly maintenance payments on regular intervals plus contingency fees equal to a percentage of the sale of their individual ownership interests in AWI or Congolese Wireless Network ('CWN') and a percentage of any net recovery against the Defendants in the Underlying Shareholder Derivative Action (hereafter 'the Contingency Fee')." This addressed the first issue raised by the trial court in its ruling on the demurrer to the first amended cross-complaint.

The rest of the allegations set out to address the second issue specified by the trial court, the lack of facts alleged to show an absence of intent to perform. H&A cited meetings on specific dates with named individuals present and set forth facts it claimed supported the lack of intent to perform. This included the allegation that Handel was asked to "defraud its malpractice carrier on behalf of the Cross-Defendants so that the proceeds from a bogus malpractice claim could be used to pay a portion of the Cross-

12

Defendants' Contingency Fee obligation so that the Cross-Defendants would not have to fulfill their promises to Handal or pay him themselves."

The next paragraph specifically alleged the Wymont entities refused to pay the contingency fee portion of the fee agreement, and the final paragraph alleged the conduct was so egregious as to warrant punitive damages.

The trial court found these additional facts did not create a new cause of action. "[T]he first iteration of false promise and basically the same as the second iteration, particularly because the issue is what was in cross-defendants' mind when the promise was made." We agree. "When a plaintiff has alleged protected activity, but no corresponding legal theory for relief, there is no claim arising from anything, let alone one arising from protected conduct." (*Starview Property*, *supra*, 41 Cal.App.5th at p. 210.)

The additional allegations were merely context, or in the words of the trial court, "put[ting] more meat on the bone." The new allegations did not create a cause of action, nor, despite the Wymont entities claims to the contrary, they did add "new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion."[3] (*Newport I*, *supra*, 6 Cal.App.5th at p. 1219.)

Further, we reject the Wymont entities' assertion that a request for punitive damages is a "cause of action." Punitive damages are a remedy; they are not a cause of action, and the Wymont entities provide no contrary authority.

Thus, even assuming the new allegations referred to protected activity (which is far from clear from the face of the cross-complaint), an anti-SLAPP motion

---

[3] The Wymont entities offer a declaration Handal submitted in opposition to a motion for summary judgment in another case filed in federal court to buttress its argument. At most, however, such a declaration can provide only some limited amount of context; it is not a substitute for what is actually alleged in the second amended complaint. Here, this declaration is unhelpful, as it simply references the same scheme the second amended cross-complaint refers to.

13

cannot be directed at the type of allegations that were added here. (*Baral v. Schnitt*, *supra*,1 Cal.5th at p. 394.) Nor can it be based on an entirely conclusory allegation requesting punitive damages. The legal basis for relief has not changed from the first amended cross-complaint to the second.

The Wymont entities demurred to the first amended cross-complaint on the grounds that it failed to state facts sufficient to create a cause of action. The trial court agreed as to the false promise claim, and H&A set out to amend its complaint to remedy the identified deficiencies. To do so, it added facts intended to support its assertion that the Wymont entities had no intent fulfill the promises they allegedly made. These are exactly the type of facts that the Wymont entities claimed were missing in its demurrer. It is at best disingenuous to complain that H&A subsequently pleaded them. Further, because they are purely contextual and do not state a cause of action, they do not constitute grounds for restarting the 60-day clock for filing an anti-SLAPP motion.

Because we find the anti-SLAPP motion was untimely, we need not consider its merits.

*Attorney Fees*

In the conclusion to its brief, H&A asked this court to award attorney fees on appeal. On our own motion, we sent out an order giving the parties the opportunity to brief this issue or to discuss it at oral argument, and we have considered those arguments.

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (§ 425.16, subd. (c)(1).) "'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).)

The Wymont entities argue this court cannot award attorney fees under sections 425.16 because section 128.5 references the "trial court." They cite *Evans v.*

14

*Unkow* (1995) 38 Cal.App.4th 1490, for the proposition that "the interrelated provisions of sections 425.16 and 128.5 do not apply to appellate proceedings." That opinion actually reaches the opposite conclusion: "The defendants correctly contend that if they prevail on this appeal they are entitled to recover their appellate attorney fees. A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise. [Citations.] Under . . . section 425.16, subdivision (c), a prevailing defendant on a special motion to strike a SLAPP suit 'shall be entitled to recover his or her attorney's fees and costs.' The statute does not preclude recovery of appellate attorney fees by a prevailing defendant-respondent; hence they are recoverable." (*Id*. at pp. 1499-1500; see *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 139.)

Had the Wymont entities acknowledged this and claimed there is a meaningful distinction here between prevailing plaintiffs and defendants, we would reject that argument as well. The statutory entitlement to fees comes from the anti-SLAPP statute, and it is set forth clearly in section 425.16, subdivision (c), which does not preclude the recovery of appellate fees. (*Evans v. Unkow*, *supra*, 38 Cal.App.4th at pp. 1499-1500.) We do not find that the language "pursuant to Section 128.5" prohibits such an award. Section 128.5 provides the standard the court is to use to decide if the motion was frivolous or taken for purposes of delay; it does not provide the substantive remedy. Moreover, there is no principled reason the anti-SLAPP statute would allow a prevailing defendant to recover attorney fees on appeal yet preclude fees for a prevailing plaintiff, when such fees are permitted in the trial court. We decline to interpret the statute in such an illogical matter.

We also reject the Wymont entities' contention that any issue of attorney fees was waived by H&A's failure to file a cross-appeal of the trial court's order, which did not grant attorney fees in the trial court. No cross-appeal is necessary since H&A is not seeking a reversal of that order; it is seeking fees on appeal only.

15

As to the substance of the request, the relevant standard for assessing whether a motion is frivolous and without merit is whether any reasonable attorney would objectively conclude the motion is totally devoid of merit. (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 683-684.) While we decided above that the Wymont entities were wrong on the timeliness issue, their arguments were not so misplaced that any reasonable attorney would conclude the appeal lacked merit. We therefore must find the appeal of the anti-SLAPP does not meet the high standard (or, perhaps, the low standard) set for frivolousness under section 128.5. Accordingly, we deny H&A's request for attorney fees on appeal.

### III

### DISPOSITION

The order denying the anti-SLAPP motion is affirmed. H&A's request for attorney fees on appeal is denied. H&A is entitled to its costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

FYBEL, J.

THOMPSON, J.

16