Filed 1/31/23  Reed v. Pearlstone CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOHN BRIAN REED et al., Plaintiffs and Appellants, v. JON BARRY PEARLSTONE et al., Defendants and Respondents. | A161285 (Marin County Super. Ct. No. CIV2000495) |

This case arises from a dispute among neighbors in Sausalito—the Reeds and the Pearlstones, along with the Pearlstones' tenant Sarah Lent—regarding construction on the Reeds' adjacent property. In December 2019, Lent filed a small claims action against Phyllis Reed, as well as the Reeds' construction company Dennis Webb Construction (Webb Construction), its owner Dennis Webb, and supervising contractor Bruce Ingram, seeking $8,811 they had purportedly agreed to pay her for construction noise.  The Reeds, Webb Construction, and Dennis Webb (collectively, plaintiffs) then filed this civil action against both the Pearlstones and Lent (collectively, defendants).  The operative complaint asserted a single cause of action

1

against Lent for intentional interference with the contract between the Reeds and Webb Construction.

Lent filed a special motion to strike under the anti-SLAPP statute.[1] The trial court granted Lent's motion upon finding the gravamen of the allegations against her arose from activity protected by the SLAPP statute, and plaintiffs had failed to show a substantial likelihood of prevailing on their claim. On appeal, plaintiffs argue that this order should be reversed because (1) the trial court abused its discretion in considering Lent's anti-SLAPP motion filed two months late; and (2) the trial court erred in its findings on the motion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

John and Phyllis Reed own a house in Sausalito. Jon and Susan Pearlstone own the adjacent house uphill from the Reeds. Lent is a tenant who lives at the Pearlstones' house. In late 2018, the Reeds contracted with Webb Construction to perform work that included water damage repairs. According to the Reeds, the water intrusion and resulting damage were caused by modifications that the Pearlstones had made to their own property, as well as negligent maintenance of that property. According to defendants, construction on the Reeds' property exceeded the scope of the permits and was not limited to water damage repairs, but was instead a full remodeling of their house.

### A. *Lent's Small Claims Action*

In December 2019, Lent filed a small claims action against Phyllis Reed, Webb Construction, Webb, and Ingram. Lent sought

---

[1] Code of Civil Procedure section 425.16. Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

$8,811, claiming that these defendants had "agreed to pay this money in exchange for starting their building project at 8 AM vs 10 AM and haven't paid." It attached an invoice from Jon Pearlstone (Pearlstone) to the Reeds, Webb Construction, and Ingram for $4,140 purportedly owed to Lent for "noise days" during September 2019. It also noted two prior invoices for $2,160 and $2,511, respectively.

B. *Complaint in this Action*

In February 2020, plaintiffs filed a complaint alleging five causes of action against defendants for (1) trespass; (2) negligence; (3) nuisance; (4) strict liability; and (5) intentional interference with contract. They filed an amended complaint in June 2020 that maintained multiple causes of action against the defendants, but asserted only a single claim by plaintiffs against Lent for intentional interference with the contract between the Reeds and Webb Construction.

The amended complaint alleged that defendants "repeatedly, continually, and unreasonably demanded construction updates and schedules, as well as demanded that construction begin no earlier than 10 a.m.," despite being informed that the City of Sausalito (City) permits construction to start earlier. Webb Construction "voluntarily agreed to start at 10 a.m. on days they expected the construction noise to be a little louder due to the use of some machinery required for the rebuilding of the foundation." Defendants continued to "disrupt, harass, intimidate, interrogate, shout at, and otherwise interfere with Dennis Webb Construction employees and sub-contractors' ability to perform their duties and continue with construction." At the "behest" of Lent, Pearlstone regularly videotaped construction workers, made

3

baseless and unfounded police reports, and made baseless and unfounded complaints to the City for the purpose of harassing, intimidating, and interfering with the construction.

The amended complaint also alleged that the Reeds discussed payment of money to their neighbors to stop this behavior, but that they did not reach an agreement. Pearlstone nevertheless started to send invoices for "daily 'noise' fees." "Soon thereafter," Lent filed her small claims action. Pearlstone continued to send invoices to the Reeds for money purportedly owed to Lent.

### C. *Anti-SLAPP Motion*

On July 30, 2020, Lent filed an anti-SLAPP motion. Plaintiffs' opposition to the motion included declarations from Webb and Ingram. Webb declared that during a December 2018 call, Pearlstone "demanded that we provide him with regular written construction schedules, updates on construction, the days we expected excessive noise, that we not start construction before 10AM, and that we make adjustments to our work schedules to accommodate Lent." Pearlstone "made it clear" that he was also speaking on behalf of Lent. Ingram declared that he was "regularly confronted" by Pearlstone or Lent about construction noise, and that they "rudely demanded" construction not start until 10:00 a.m.

Webb's declaration also attached e-mail correspondence with Pearlstone. In July 2019, Pearlstone sent an e-mail stating that he had not received an update on the planned construction activities as discussed. In August 2019, Pearlstone sent an e-mail stating that he had not received a project timeline as requested. Webb responded that the construction schedule was not yet complete, but that Pearlstone

4

would be "the first to get it." When Pearlstone asked if construction was going to take 6 to 12 months or longer, Webb replied: "Yes the project will be at least 6 months, what are your other issues?" On September 5, 2019, Pearlstone sent another e-mail asking Webb when he would have the construction schedule. Pearlstone also told Webb he had received a text from Lent that construction workers "were talking loudly at 8:30 yesterday morning and started a chain saw before 9:30."

According to Ingram, there was an occasion where Lent "yelled" at him to stop working and told him that she would call Pearlstone and the police. She videotaped Ingram and shortly thereafter, a police officer came to the property. Ingram showed the police officer his construction permit and told him that he never entered the Pearlstone property. Ingram's declaration attached a police report dated October 1, 2019. It indicated that the reporting party was the "property owner" and that the construction company was "starting work early, [coming] on his property to complete project, parking issues, and dumping gravel in the street."

In November 2019, a building inspector came to the Reed property and posted a "Stop Work" order after receiving complaints from Pearlstone regarding the scope of work. The building inspector subsequently sent an e-mail to defendants stating that City staff had investigated the alleged violations, the contractor "had demonstrated satisfactory percentages of effected floor area," and the order had been rescinded.

On November 15, 2019, Pearlstone e-mailed the inspector after receiving a text from Lent that there was "loud construction" at the

5

Reed property "since well before 8 AM." The inspector advised Pearlstone to call the police.

According to Webb, Lent complained that construction workers had trespassed onto the Pearlstone property on June 30, 2020. An e-mail from the building inspector stated that he had received a complaint from Pearlstone relaying Lent's request that the workers not trespass. The building inspector had directed Pearlstone to contact the police to file a formal complaint.

## D. *Trial Court's Ruling*

The trial court granted Lent's anti-SLAPP motion. As a preliminary matter, it noted plaintiffs' argument that the motion was untimely, but explained that "the court has chosen to exercise its discretion under [section] 425.16[, subdivision] (f) to examine the special motion to strike on the merits." On the merits of the motion, the trial court looked first to whether Lent had made a threshold showing that the cause of action against her (intentional interference with the contract) arose from activity protected by the anti-SLAPP statute. It found that the gravamen of the allegations against Lent—including her small claims action, the complaints to the City, and the police reports—arose from protected activity.

The trial court then turned to whether plaintiffs had shown a substantial likelihood of success on their claim against Lent for intentional interference with contractual relations. To prevail on this claim, a plaintiff must plead and prove: (1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) breach or disruption of

6

the contractual relationship; and (5) damage. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) The trial court found that plaintiffs had made a strong showing on all of the elements except (3). It concluded that, setting aside Lent's protected activities, the remaining alleged conduct—including requests for timelines and plans—was not enough to support a claim for intentional interference with contractual relations. The trial court awarded Lent $4,011.25 in attorney fees and costs as the prevailing party on the motion.

This appeal followed.

## DISCUSSION

The anti-SLAPP statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) "[A]s subdivision (a) of section 425.16 expressly mandates, the section 'shall be construed broadly.' " (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463.) Under the statute, a defendant may file a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) The motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (*Id.*, subd. (f) (section 425.16(f)).)

Resolution of this motion requires the court to engage in the now familiar two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of

7

action is one arising from protected activity." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the court finds a showing has been made under the first step, "it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid.*)

Here, plaintiffs argue that the order granting Lent's anti-SLAPP motion should be reversed for two reasons. First, they contend that the trial court abused its discretion in even considering the motion because it was filed late. Second, they argue that the trial court erred in its findings under the two-step process. We address each argument in turn.

## I.   Discretion to Consider Untimely Motion

There is no dispute that Lent's anti-SLAPP motion was filed after the statutory deadline. According to plaintiffs, COVID-19 court closures extended that deadline to June 1, 2020,[2] but Lent filed her motion two months later on July 30. The trial court nevertheless chose "to exercise its discretion under §425.16(f) to examine the special motion to strike on the merits."

Section 425.16(f) provides for the filing of an anti-SLAPP motion "within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Plaintiffs argue that this statutory language should be interpreted to mean that

---

[2] This date is based on the filing of the original complaint, not the amended complaint. Amendment does not restart the 60-day clock for filing a timely anti-SLAPP motion where, as here, the motion seeks to strike a cause of action that was asserted in the original complaint with allegations subjecting the cause of action to such a motion. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1219.)

the trial court lacked any discretion to consider the motion because Lent did not first request leave to file her untimely motion and the trial court did not explicitly grant such a request.

We are not persuaded. The plain language of section 425.16(f) affords the trial court with broad discretion to permit a late-filed motion "upon terms it deems proper." Courts have agreed that this discretion is not limited by whether or not the moving defendant sought leave of court before filing an untimely motion. In *Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, for example, the trial court determined that the defendants' motion was frivolous because it was filed after the 60-day deadline without a previous request for leave to file. (*Id.* at p. 684.) *Chitsazzadeh* rejected that reasoning, concluding that a court "has the discretion to consider, and grant or deny on the merits, a special motion to strike filed after the 60-day deadline even if the moving defendant fails to request leave of court to file an untimely motion." (*Ibid.*) Then, in deciding to exercise this discretion, courts may look to whether consideration of the motion serves the purposes of the anti-SLAPP statute: to allow for the " '*prompt* exposure and dismissal of SLAPP suits' " and "to permit the defendant to test the foundation of the plaintiff's action before having to 'devote its time, energy and resources to combating' a 'meritless' lawsuit." (*Morin v. Rosenthal* (2004) 122 Cal.App.4th 673, 679–681 [no abuse of discretion where trial court treated oral argument on untimely SLAPP motions "as a 'belated request for extra time to file the motion,' " but ultimately denied motions as untimely because defendants had chosen to spend seven months trying to move the case to federal court instead of attempting to strike the suit as a SLAPP].)

9

Plaintiffs offer no authority adopting their contrary rule that a trial court lacks *any* discretion to consider an untimely motion without an explicit prior request for leave and explicit grant of that request. Indeed, *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634 flatly rejected this rule. (*Id.* at p. 653 [South Sutter "argues the trial court could not hear the motion because the Miller defendants failed to file a separate motion seeking leave to file their anti-SLAPP motion late. . . . [¶] We disagree with South Sutter's arguments"].) Other cases cited by plaintiffs support the analytical framework described in *Morin v. Rosenthal, supra,* 122 Cal.App.4th 673: courts' exercise of discretion to consider an untimely motion should be informed by the purposes of the anti-SLAPP statute. (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 784 [abuse of discretion to grant defendant's application to file anti-SLAPP motion two years late because parties had completed a substantial amount of discovery, discovery cut-off date had already passed, and trial was scheduled to commence in less than three months]; *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1190 [no abuse of discretion in failing to entertain anti-SLAPP motion 558 days late because parties had engaged in extensively contested discovery proceedings and major part of case had already been tried]; *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 283–286 [no abuse of discretion in declining to hear anti-SLAPP motion 278 days late after extensive expensive litigation proceedings had already occurred].) At most, plaintiffs cite cases that include failure to seek leave as *part* of this analysis. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism, supra*, 6 Cal.App.5th at pp. 1219–1220 [no abuse of

discretion in denying anti-SLAPP motion as untimely where defendant filed late motion without seeking leave and parties had engaged in extensive discovery, as well as related motion practice], *Kunysz v. Sandler* (2007) 146 Cal.App.4th 1540, 1543 [no abuse of discretion in denying anti-SLAPP motion as untimely where defendant filed late motion without seeking leave and failed to establish why consideration of the motion was proper].)

Even with Lent's failure to seek prior leave, we conclude that the trial court did not abuse its discretion in considering the motion here. Lent filed her motion only two months late, resulting in significantly less delay than any of the cases cited by plaintiffs. No discovery had been conducted. Moreover, the declaration submitted by Lent's counsel[3] shows that the parties had been discussing the anti-SLAPP motion since at least March 2019, before the deadline had passed. Under these circumstances, consideration of the motion advanced the purposes of the anti-SLAPP statute by allowing prompt resolution of Lent's challenge to the single claim against her before the parties expended significant resources on discovery. The court did not abuse its discretion under section 425.16(f).

Given this conclusion, we turn to the trial court's resolution of the motion on its merits based on the two-step process outlined above. Our review is de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

---

[3] Plaintiffs moved to strike the entirety of this declaration, but alternatively objected to certain paragraphs and exhibits. The trial court sustained those objections. Lent does not challenge this ruling on appeal. We thus refer only to paragraphs of the declaration without a specific sustained objection.

11

## II.    First Step:  Protected Activity

The first step of the anti-SLAPP analysis requires us to decide whether plaintiffs' intentional interference claim against Lent arises from protected activity.  (*Equilon Enterprise v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 67.)  Protected activity is defined by section 425.16, subdivision (e) (section 425.16(e)) to include:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."[4]

On this step, the moving defendant bears the burden "to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011 (*Bonni*).)  When plaintiffs assert a "mixed" cause of action, i.e., one "based on allegations of both protected and unprotected activity," the court must look at the protected activity and disregard the unprotected activity at this stage.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)  "If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached."  (*Ibid.*)  Courts may refer to this analysis as a "gravamen test" to determine whether particular alleged acts supply

---

[4] Section 425.16(e) also includes two other categories of protected activity, but Lent concedes that neither is applicable here.  We thus need not address plaintiffs' arguments that these other categories do not apply.

the elements of a claim, or merely provide context as incidental background. (*Bonni*, at p. 1012.)

With this framework in mind, we analyze the various allegations asserted in the complaint that involve Lent, including: (1) the small claims action, (2) complaints to the City, and (3) the videotaping of construction workers and police report.

### A. *Small Claims Action*

Plaintiffs do not dispute the general rule that the filing of a small claims action constitutes protected activity under the anti-SLAPP statute. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [constitutional right of petition includes basic act of filing litigation].) Instead, plaintiffs argue that the general rule does not apply here for two reasons.

First, they contend that the allegations regarding Lent's small claims action were "simply incidental background," not part of their claim. We disagree. To support their intentional interference cause of action, plaintiffs "refer to and incorporate as though fully set forth herein" the general allegations in their complaint. This included the general allegation that Lent filed a small claims action against Phyllis Reed, Webb, and Ingram.

Then, in opposition to Lent's anti-SLAPP motion, plaintiffs submitted a declaration from Webb stating that he was "astounded by [Lent] filing a lawsuit and believed that this was just another arrow in their quiver in their relentless efforts to stop construction and to have me quit the Reed construction job completely." Ingram's declaration similarly stated that he was "upset and suffered great anxiety" because of Lent's small claims action, and believed that Lent was using it "as [a]

13

tool to coerce me into complying with her demands to start construction later in the mornings and stop sooner in the afternoons, as well as to possibly scare me into quitting my position with Webb Construction, which would delay the progress of construction." Given this evidence proffered by plaintiffs, we conclude that the allegations regarding Lent's small claims action were not merely "incidental background," but instead were asserted to support plaintiffs' claim for relief. (*Bonni, supra,* 11 Cal.5th at p. 1011.)

Nor are we persuaded by plaintiffs' attempt to distance themselves from this evidence by noting that the small claims action did not name every plaintiff (John Reed, for example), and that there is no evidence Ingram shared his "thoughts and feelings" with plaintiffs. Neither point is relevant here, as the evidence (including the declaration from plaintiff Dennis Webb) makes clear that these allegations were used to support an element of plaintiffs' intentional interference claim: that Lent filed the small claims action to induce a breach or disruption of the contractual relationship between the Reeds and Webb Construction.

Second, plaintiffs argue that they were entitled to file this action as a "compulsory cross-complaint" on a related cause of action[5] against Lent's small claims action, and that compulsory cross-complaints "rarely" qualify as SLAPP suits arising from petition activity. But the authority cited by plaintiffs explains that a cross-complaint may be subject to an anti-SLAPP motion when it alleges a cause of action

---

[5] Section 426.30, subdivision (a) provides, with certain exceptions, that a defendant must allege any related cause of action in a cross-complaint at the time of serving his or her answer to the complaint.

arising from the act of filing litigation. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 [affirming grant of anti-SLAPP motion because church's action attacked judgment Wollersheim had obtained in prior action]; cf. *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [affirming denial of anti-SLAPP motion because cross-complaint alleges related causes of action arising from Kajima's bidding and contracting practices, not from acts in furtherance of its right of petition or free speech].) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) Here, as explained above, the alleged acts asserted for plaintiffs' intentional interference claim include Lent's filing of the small claims action.

Finally, to the extent that plaintiffs alleged acts related to the invoices for "daily 'noise' fees" owed to Lent, which formed the basis for her small claims action seeking payment of these invoices, plaintiffs conceded in their briefing and at oral argument on appeal that *Pearlstone* (not Lent) sent those invoices. The only alleged act by *Lent* is the attachment of the invoice dated October 1, 2019, in the filing of her small claims action. That filing is protected activity under the anti-SLAPP statute. (*Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at p. 1115.)

### B. *Complaints to City*

Plaintiffs alleged that Pearlstone, at the "behest" of Lent, made "baseless and unfounded complaints to the City as part of their daily

15

campaign of harassment, intimidation, interference, interrogation, disruption, and to dissuade the construction crew from working and performing their obligations under the construction contract with the Reeds." As a preliminary matter, there are no specific allegations (let alone admissible evidence) that *Lent herself* took these actions. Moreover, at oral argument on appeal, plaintiffs' counsel denied any argument that Pearlstone was acting as an agent for Lent (i.e., acting at her "behest"), but instead argued that Pearlstone and Lent had acted "in concert" with each other. Even accepting that Lent was involved to some extent with complaints made to the City, we agree with the trial court that this activity was protected under the anti-SLAPP statute.

First, we are not persuaded by plaintiffs' argument that the alleged complaints are not protected activity because there was no "official proceeding" in progress when they were made. Section 425.16(e)(2) defines protected activity to include "any written or oral statement or writing *made in connection with an issue under consideration or review by a legislative, executive, or judicial body*, or any other official proceeding authorized by law." (Italics added.) The cases cited by plaintiffs help clarify the scope of section 425.16(e)(2), albeit not in their favor. In *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191 (*Industry*), the plaintiffs alleged that the defendants had defrauded the State Board of Equalization by falsely reporting certain locations as the point of sale. (*Id.* at p. 215.) *Industry* concluded that the routine submission of tax reports to the State Board of Equalization did not involve a "proceeding" or "an issue under consideration or review" by an official body within the meaning of 425.16(e)(2). (*Industry,* at p. 217.) Similarly, in *A.F. Brown Electrical*

16

*Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118 (*Brown*), a subcontractor issued stop notices to the school district based on amounts it was purportedly owed by the general contractor. (*Id.* at p. 1123.) *Brown* concluded that the submission of these notices did not constitute protected activity under section 425.16(e)(2) because they essentially functioned like a lien; there was no "official proceeding" in progress and the subcontractor "did not request the district to commence any type of proceeding, or to make any type of administrative or adjudicatory decision." (*Brown*, at p. 1129.)

Here, unlike *Industry* and *Brown*, e-mails with the City show that Lent had "petitioned the [Sausalito] Planning Commission for answers to multiple concerns in writing and was told her matter would be responded to by planning department staff." Those e-mails also show that complaints from Pearlstone resulted in an *investigation* by City staff and a *decision* by the Community Development Department that Webb Construction was working with the scope of the issued permit. Even if there was not an "official proceeding," the evidence is clear that Lent or Pearlstone made writings related to "an issue under consideration or review" by an official body under section 425.16(e)(2).

Second, we are not persuaded by plaintiffs' argument that section 425.16(e)(2) is inapplicable here because there is no evidence that Lent "personally communicated with the City." As described above, this proposition is contradicted by e-mails regarding Lent's petition to the Sausalito Planning Commission, as well as e-mails to and from the City building inspector including Lent as an addressee. In any event, plaintiffs offer no authority to support their position that Lent must have been the *direct* communicator (as opposed to the person allegedly

17

*directing* the communications) to constitute protected activity. On the contrary, courts have explicitly stated that the right of petition does not protect only "those persons formally addressing the governmental agency," but also persons who exercise their rights "by supporting the forceful activities of others." (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 17–18.)

Nor are we persuaded by plaintiffs' alternative argument that section 425.16(e)(2) is inapplicable here because Pearlstone's complaints constituted "commercial speech" exempt from anti-SLAPP protections. Section 425.17, subdivision (c) (section 425.17(c)) provides, in relevant part, that the anti-SLAPP statute does not apply to "any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person" if (1) the statement or conduct "consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services" and (2) the intended audience "is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer[.]"

There is no indication that plaintiffs raised this argument in the trial court below, and thus we deem it forfeited. (*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 936.) Even if not forfeited, we would still reject the argument. Unlike the anti-SLAPP

18

statute, the commercial speech exception of section 425.17(c) must be narrowly construed. (*Xu v. Huang* (2021) 73 Cal.App.5th 802, 813.) We see no basis to exclude the cause of action asserted *against Lent* based on *Pearlstone's* status as her landlord. Nor are we persuaded that the elements of section 425.17(c) are met here: (1) that complaints about the Reeds' construction constituted representations about Pearlstone's (or his competitor's) "business operations, goods, or services"; or (2) that the intended audience of these complaints—the City—was a person likely to repeat to or otherwise influence a "buyer" or "customer." We thus conclude that the allegations regarding complaints to the City are largely based on actions taken by Pearlstone, not Lent. But even accepting Lent's alleged involvement in those actions, they constitute protected activity under the anti-SLAPP statute.

## C. *Videotaping and Police Report*

Plaintiffs identify a single specific instance of alleged videotaping and making of a police report: according to Ingram, Lent yelled at him, demanded he stop working, and told him that she would videotape him and call Pearlstone and the police. Ingram saw Lent videotape him and a police officer came to the Reeds' property, but then left. The police report attached to Ingram's declaration identified several complaints, including that Webb Construction was starting work early and coming onto the Pearlstone property.[6]

---

[6] The parties appear to dispute whether this incident occurred on October 1, 2019 or June 30, 2020. The date is immaterial to our analysis. We note, however, that the police report is dated October 1, 2019, and there is no evidence that the June 30, 2020 incident involved videotaping or the filing of a police report. We also note that, while the complaint included a general allegation that *Pearlstone* videotaped construction workers at Lent's "behest," there are no specific

19

Communications with the police constitute protected activity under section 425.16(e)(2) as statements made "in connection with" an "official proceeding authorized by law." (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941.) Moreover, communications that are "preparatory to or in anticipation of" such proceedings fall within the protection of the anti-SLAPP statute. (*Comstock*, at p. 943.) According to Ingram, Lent announced that she was going to videotape him and call the police; she then videotaped him and the police were called. Given her stated intent to perform these acts in tandem, we conclude that the alleged videotaping was "preparatory to" or "in anticipation of" the police report, and thus is protected activity under the statute. We reject plaintiffs argument that Lent's alleged videotaping does not satisfy this definition because Pearlstone, not Lent, was the "reporting party" who actually called the police. As explained above, plaintiffs alleged that Lent and Pearlstone acted in concert and that Pearlstone acted in order to further *Lent's* rights. (*Ludwig v. Superior Court*, *supra*, 37 Cal.App.4th at pp. 17–18.)[7]

In sum, we conclude that the trial court did not err in finding that plaintiffs sought relief based on allegations—including the small

---

allegations or proffered evidence of any videotaping by Pearlstone (who, according to plaintiffs, lives in Southern California). (See *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 631 [claim must be pleaded with sufficient specificity to discern whether the alleged acts concerned protected activity].)

[7] Given this conclusion, we need not address the trial court's alternative findings (or the parties' related arguments) that the alleged videotaping was (1) protected by the litigation privilege; and (2) not actionable to support plaintiffs' intentional interference claim.

claims action, complaints to the City, videotaping and police report—
that arose from protected activity.

### III.   Second Step:  Probability of Prevailing

We thus reach the second step of the anti-SLAPP analysis to
decide whether plaintiffs have demonstrated a probability of prevailing
on their intentional interference claim.  (*Baral*, *supra*, 1 Cal.5th at
p. 384.)  Our determination follows a "summary-judgment-like
procedure," where we consider the pleadings, and supporting and
opposing affidavits stating the facts upon which the liability or defense
is based.  (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th
180, 192; § 425.16, subd. (b)(2).)  "We do not weigh credibility, nor do we
evaluate the weight of the evidence."  (*Overstock.com, Inc. v. Gradient
Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699–700.)  While plaintiffs
need only show a " 'minimum level of legal sufficiency and triability,' "
they must demonstrate that their claim is legally sufficient and
supported by a sufficient prima facie showing made with competent
and admissible evidence.  (*Hecimovich v. Encinal School Parent
Teacher Organization*, *supra*, 203 Cal.App.4th at p. 469.)  Plaintiffs
must also overcome "substantive defenses" to their claim.  (*Comstock v.
Aber*, *supra*, 212 Cal.App.4th at p. 953.)

Here, the trial court did not consider the allegations of protected
activity (as determined on the first step) in deciding whether plaintiffs
had satisfied their burden on the second step.  Neither party challenges
this premise; plaintiffs instead simply renew their arguments that the
alleged activity was not protected.  We question the trial court's
reasoning, insofar as it suggests that allegations of protected activity in
any "mixed" cause of action should be entirely ignored on the second

21

step. (See *Baral, supra,* 1 Cal.5th at p. 395 ["plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity"].) In this case, however, we nonetheless conclude that the allegations of protected activity do not support plaintiffs' showing because the right to petition is a substantive defense to a claim for intentional interference with contract. (E.g., *Premier Medical Management Systems, Inc. v. California Insurance Guarantee Assn.* (2006) 136 Cal.App.4th 464, 478 [immunity for those who petition government for redress applies to " 'virtually any tort, including unfair competition and interference with contract' "].

Plaintiffs are thus left with their allegations of unprotected activity—that, through Pearlstone, Lent made demands regarding construction time, updates, and schedules—and their evidence asserting facts to support these allegations.[8] Again, plaintiffs offer no specific allegations or evidence of such actions taken *by Lent herself.* According to Webb's declaration, he had a call with Pearlstone in December 2018, where Pearlstone "made it clear" that he was speaking on behalf of Lent and demanded schedules, updates, and that construction not start before 10:00 a.m. on days when "excessive noise" was expected. Webb's declaration also attached an e-mail from Pearlstone in September 2019, relaying a text from Lent that construction workers "were talking loudly at 8:30 yesterday morning

---

[8] While the trial court also considered plaintiffs' allegations of "shouting" and "interrogation" by Lent, the only evidence of such conduct cited by plaintiffs pertains to the police and videotaping incident. As explained above, this is protected activity and a substantive defense to plaintiffs' claim; it does not demonstrate a likelihood of prevailing on the claim.

and started a chain saw before 9:30." Plaintiffs offered no authority, in their opposition to the underlying motion or on appeal, that these allegations are sufficient to demonstrate a likelihood of prevailing on the claim. On the contrary, we are not persuaded that purported statements made by *Pearlstone* can be admitted to establish the elements required for plaintiffs' claim *against Lent*, namely the element of intent: that Lent was making demands intentionally designed to disrupt the relationship between the Reeds and their construction company. Moreover, at least with respect to the September 2019 e-mail, plaintiffs concede that they had "voluntarily agreed to start at 10 a.m. on days they expected the construction noise to be a little louder due to the use of some machinery required for the rebuilding of the foundation." Lent's purported complaint that construction workers had "started a chain saw before 9:30" violated that agreement. "Justification for the interference is an affirmative defense and not an element of plaintiff's cause of action." (*Richardson v. La Rancherita* (1979) 98 Cal.App.3d 73, 80.) Lent was justified in complaining about any non-compliance with the parties' agreement regarding start times for loud noise and use of machinery. Given the allegations of unprotected activity and related evidence proffered here, we conclude that plaintiffs failed to demonstrate a likelihood of prevailing on their claim.

In sum, we conclude that the trial court did not err in granting Lent's anti-SLAPP motion.[9]

[9] Plaintiffs sought reversal of both the trial court's ruling on the motion, as well as the fees and costs awarded to Lent. Both requests were based on the same arguments, which we reject for the reasons described above. In affirming the order, we also reject plaintiffs'

## DISPOSITION

The order is affirmed.   Lent is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1),  (2).)

---

request that they be awarded fees and costs on both the underlying motion and the appeal.

_____
Van Aken, J.*

We concur:

_____
Richman, Acting P.J.

_____
Miller, J.

*Reed et al. v. Pearlstone et al.* (A161285)

\* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25